Filed 4/11/22  In re D.M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re D.M. Jr., et al., <br><br> Persons Coming Under the Juvenile Court Law. | B314577 <br><br> (Los Angeles County Super. Ct. No. 18LJJP00066) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>      Plaintiff and Respondent, <br><br> v. <br><br> CYNTHIA R., <br><br>      Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Michael C. Kelley, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

_____

Following the birth of each of mother Cynthia R.'s and father D.M. Sr.'s three children, the Los Angeles County Department of Children and Family Services (the Department), filed a petition alleging substantial risk of harm to the child based on the parents' current substance abuse. Three and a half years after the first petition was filed, the juvenile court terminated parental rights as to each child. During those years, Mother denied eight times that she or her children had Indian ancestry. As to the first child, Father denied Indian ancestry, and paternal grandmother denied that she or Father had Indian ancestry.

Mother's sole contention on appeal is that the Department failed to comply with its duty under state law implementing the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) to inquire of extended family members whether her children may be Indian children. (See Welf. & Inst. Code,[1] § 224.2.) Mother argues this error was prejudicial. We conclude it was not, and thus, we affirm.

_____

[1] Subsequent unspecified statutory references are to the Welfare and Institutions Code.

# BACKGROUND[2]

## A.    D.M. Jr.

On January 25, 2018, the Department filed a section 300 petition alleging, inter alia, that newborn D.M. Jr. was at substantial risk of harm due to Mother's and Father's substance abuse as well as Father's failure to protect D.M. Jr.'s paternal half-sibling.[3]  The Department attached to the petition a Judicial Council of California ICWA-010(A) form indicating that according to Mother, D.M. Jr. "has no known Indian ancestry."

On January 26, 2018, the juvenile court held a detention hearing.  It found Father (who was not present or represented by counsel) to be D.M. Jr.'s presumed father.[4]  On that same date, Mother filed an ICWA-020 form,[5] in which she stated, "I have no Indian ancestry as far as I know."  The form advised Mother that she must inform her attorney, the court, and the Department of any new information about D.M. Jr.'s Indian status.  The court

---

[2] Because the sole issue on appeal is compliance with the state statute implementing ICWA, a detailed recitation of the non-ICWA related background is not necessary to the resolution of this appeal.

Father is not a party to this appeal.

[3] The petition alleged D.M. Jr.'s half sibling was a dependent of the juvenile court and received permanent placement services due to Father's substance abuse.

[4] Mother and Father told a Department social worker that Father was D.M. Jr.'s biological father.  D.M. Jr.'s birth certificate lists D.M. Sr. as his father.

[5] In each instance described in this opinion, Mother signed the January 2008 version of the ICWA-020 form.

determined it did not have reason to know D.M. Jr. was an Indian child, but deferred the determination of ICWA status for Father's appearance. It ordered Mother to provide new information relevant to ICWA to the court and the Department.

On March 16, 2018, and March 20, 2018, a Department social worker spoke with Father and Mother, respectively, and each of them denied having Indian ancestry. The social worker also spoke with maternal great grandmother, maternal step-great grandfather, maternal aunt, and paternal grandmother, who lived in Nevada. Paternal grandmother expressed interest in having D.M. Jr. placed in her care.[6] During the course of the proceedings, the Department also spoke with or was aware of maternal great aunt, two paternal aunts, and maternal cousin, who also sought to be assessed for placement. The Department did not ask any of these relatives about their Indian ancestry or whether the children were Indian children.

On April 3, 2018, the juvenile court held a combined jurisdictional and dispositional hearing. Neither parent[7] attended the hearing. However, paternal grandmother and a

---

[6] Throughout the proceedings, paternal grandmother maintained she wanted the children placed with her and made efforts to complete the required paperwork. She moved from Nevada to California, but faced obstacles in quickly obtaining permanent housing. Further, she acknowledged that placement with her was unlikely due to a felony conviction.

[7] Father was arrested for a domestic incident in April 2018 and in jail during part of Summer 2018. His whereabouts were frequently unknown. At times, he did not live with Mother, and the Department had difficulty contacting him. In or around July 2019, Father had an outstanding warrant for his arrest.

4

paternal aunt were present. The court asked paternal grandmother, "Do you have any Indian ancestry?" She responded, "Not that I can prove. I've heard." The court then asked, "Are you registered . . . with a tribe?" She said she was not. The court went on, "How about your son. [D.M. Sr.], is he registered or has he registered with a tribe?" She responded, "No." Thus, the court found there was no reason to believe ICWA applied to Father's side of the family.[8]

The juvenile court sustained allegations of failure to protect due to substance abuse as to Mother and Father and allegations of abuse of a sibling as to Father, declared D.M. Jr. to be a dependent of the court, and placed him in foster care. The court ordered both parents to participate in reunification services and granted monitored visitation. It also ordered the Department to assess several relatives for placement, including maternal cousin and paternal grandmother (through initiating an Interstate Compact on the Placement of Children in Nevada) and to assess a paternal aunt as a monitor.

Father made his first—and only—appearance at an October 3, 2018 section 366.21, subdivision (e) review hearing. He filed an ICWA-020 form that day, checking the box that he had no Indian ancestry. The court found it did not have reason to know that ICWA applied to Father, and ordered the parents to notify the court and the Department of any new information concerning ICWA status.

At a July 11, 2019 12-month review hearing, the juvenile court found the parents' progress in alleviating the causes

---

[8] According to Father, paternal grandfather was not "around," and Father "never knew him."

necessitating D.M. Jr.'s placement was "nonexistent." It terminated reunification services, scheduled a section 366.26 hearing, and ordered the Department to continue to assess maternal cousin for placement.

**B. Noah**

On July 26, 2019, the Department filed a dependency petition relating to two-month-old Noah, alleging a risk of substantial harm due to substance abuse and abuse of a sibling. In an ICWA-010(A) form, a social worker averred that she asked Mother on June 18, 2019, about Noah's Indian status. Mother reported Noah had no known Indian ancestry.

On July 29, 2019, the juvenile court held a detention hearing. Mother filed an ICWA-020 form stating that she did not have Indian ancestry, and the court determined there was no reason to know that ICWA applied to Mother. It deferred its paternity finding and determination of ICWA status for Father's appearance. The court ordered Noah detained and placed with the same foster family as D.M. Jr.

On August 27, 2019, Mother reported to a social worker that neither she nor Father have any known Indian ancestry.

At the September 16, 2019 jurisdictional and dispositional hearing, the juvenile court sustained allegations in the petition and ordered Noah removed from his parents. Father did not attend the hearing, and the court did not make any ICWA findings.

A year later, on September 16, 2020, the juvenile court found that Mother did not make substantive progress in her case plan and terminated reunification services relating to Noah.

On July 13, 2021, the juvenile court found that D.M. Sr. was Noah's presumed father[9] and that there was no reason to know that Noah was an Indian child.

## C.   N.M.

In June 2020, Mother gave birth to a daughter, N.M., who was in poor condition at the time of her birth.  In investigating the referral relating to N.M., a Department social worker spoke with Mother, who denied Indian heritage.

On July 14, 2020, the Department filed a dependency petition containing similar allegations as those relating to N.M.'s siblings, including that at the time of N.M.'s birth, Mother tested positive for amphetamine and cocaine.  Attached to the petition is an ICWA-010(A) form in which the social worker declared she had made an inquiry and that N.M. did not have Indian ancestry. It is not clear from the record whether the inquiry was the same as the one made in June 2020.

On July 17, 2020, the juvenile court held a detention hearing.  Mother filed form ICWA-020 stating that she had no Indian ancestry as far as she knew.[10]  The court found it did not

---

[9] Mother stated Father was Noah's biological father; Father signed Noah's birth certificate; a social worker observed Father at Mother's residence, "visiting" Noah; and Mother stated in a parentage questionnaire that Father was present at Noah's birth and held him out as his child.

[10] Mother did not sign the July 17, 2020 ICWA-020 form. The form indicates she provided the information to her counsel telephonically, presumably due to the COVID-19 pandemic limits on in-person contact.  Mother does not argue this information is incorrect.

have reason to know ICWA applied to Mother and deferred its paternity determination pending Father's appearance.

On September 1, 2020, the juvenile court found true the allegations in the petition.

On September 16, 2020, the juvenile court found D.M. Sr. to be N.M.'s presumed father.[11]  It bypassed reunification services for Mother and Father on the bases that it had terminated reunification services relating to a sibling and that the parents resisted prior court-ordered treatments for substance abuse.  (§ 361.5, subd. (b)(10), (13).)  It also found that ICWA did not apply.

## D.    Termination of Parental Rights

On August 17, 2021, the juvenile court terminated Mother's and Father's parental rights relating to all three children.

Mother filed a timely notice of appeal.

## DISCUSSION

Under California law implementing ICWA, "the child welfare agency and the juvenile court have a statutory initial duty to inquire into whether a child is, or may be, an Indian child."  (*In re Darian R.* (2022) 75 Cal.App.5th 502, 507, fn. omitted.)  This "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child, and the

---

[11] Father was listed on N.M.'s birth certificate as her father.  He also visited N.M. in the hospital shortly after her birth and signed, as her father, a consent form for N.M. to receive donor milk.  Mother identified Father as N.M.'s father on a parentage questionnaire in which she indicated he was present at N.M.'s birth and held the child out as his own.

party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."[12]  (§ 224.2, subd. (b), italics added.)

It is undisputed that the Department did not ask maternal great grandmother, maternal great grandfather,[13] maternal great aunt, maternal aunt, maternal cousin,[14] or paternal aunts about any of the children's possible status as Indian children. The Department's failure to do so was error.  Whether we reverse

---

[12] The Department argues that after 2019 and 2020 amendments to section 224.2, the Department no longer need inquire of extended family members after the parents deny Indian ancestry.  We disagree.  Section 224.2, subdivision (b) unequivocally requires an initial inquiry of "extended family members."

[13] Maternal great grandfather is Mother's step-grandfather, which suggests he may be less likely to have meaningful information concerning the children's Indian status.

[14] Mother argues the Department failed to inquire of maternal cousin, maternal uncle, and paternal uncle.  The record reveals that these are all the same person, an individual named Prince W.  Although maternal cousin expressed an interest in having D.M. Jr. placed with him, the record reflects concerns with, inter alia, a DUI and that his girlfriend (who would provide child care) refused to submit to a drug test.

Mother also argues the Department failed to make an inquiry of paternal great grandmother.  There is no such person in the record.  Maternal great grandmother, Nancy S., is identified incorrectly in the record as paternal great grandmother on two occasions.

9

depends on whether this error was prejudicial. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742.)

A recent opinion of this court underscores the challenges of defining prejudice in this context. In *In re A.C.* (2022) 75 Cal.App.5th 1009, the majority, following *In re Benjamin M.*, *supra*, 70 Cal.App.5th 735, concluded prejudice exists when the Department fails to conduct an initial inquiry of extended family members if the record discloses readily obtainable information that is likely to bear meaningfully upon whether a child is an Indian child. (*In re A.C.*, *supra*, at p. 1017; see also *In re S.S.* (2022) 75 Cal.App.5th 575, 582.) Following a *Watson*[15] harmless error formulation, the dissent posited the proper approach was to require the appellant to show a reasonable probability that if the Department had made the inquiry, it would have uncovered evidence suggesting a " 'reason to believe' " the child was an Indian child. (*In re A.C.*, *supra*, at p. 1024 (conc. & dis. opn. of Crandall, J.).) As we describe below, there is no prejudice under either standard.

Mother argues the error was prejudicial "[a]s stated in" *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742 and *In re Josiah T.* (2021) 71 Cal.App.5th 388. But there is a critical difference between those cases and the one before us. In *In re Benjamin M.* and *In re Josiah T.*, the court had no information about the fathers' Indian status. (See *In re Josiah T.*, *supra*, at p. 403; *In re*

---

[15] *People v. Watson* (1956) 46 Cal.2d 818, 836 ("a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error").

10

*Benjamin M., supra*, at pp. 744-745.) Thus, inquiring of paternal extended family members would provide information about the child's Indian status where previously there was none.

Here, the court did not completely lack information from either parent, and the circumstances demonstrate that the notion that inquiring of extended family members would have yielded meaningful information is mere speculation.

We first consider the Department's failure to inquire of maternal relatives: maternal great grandparents, maternal great aunt, maternal aunt, and maternal cousin. In D.M. Jr.'s case, Mother denied Indian ancestry on three separate occasions. She was advised and ordered to provide new information relevant to ICWA to the Department and the court. Notwithstanding the advisement and order, the length of the proceedings, and that at times during the proceedings, she lived with her grandparents, sister, and aunt, and was in contact with her cousin, she never advised the court of any additional information about Indian ancestry. To the contrary, in Noah's and N.M.'s proceedings, she affirmed five more times that she had no known Indian ancestry. Thus, the record does not support the conclusion that maternal relatives would provide information that would bear meaningfully on the court's ICWA determination. (See *Darian R., supra*, 75 Cal.App.5th at p. 510 [holding where the parent challenging ICWA was under court order to provide information relevant to ICWA, was not estranged from her family, and a prior court order involving the same biologic parents found ICWA inapplicable, the record did not support the conclusion that readily obtainable information would bear meaningfully on whether the children were Indian children].)

11

Further, throughout the proceedings, maternal cousin, Mother, and Mother's counsel maintained that the children should be placed with maternal cousin. As this court observed in *In re S.S.*, *supra*, 75 Cal.App.5th 575, because preference is given to placing an Indian child with extended family (25 U.S.C. § 1915(a) & (b)), there is a strong incentive to bring to the court's attention any facts suggesting that a child is an Indian child. That Mother and maternal cousin did not so do implies maternal cousin is unaware of facts that would bear meaningfully upon whether the children are Indian children.

Turning to the children's paternal extended family members, in the case of D.M. Jr., both Father and paternal grandmother reported they had no Indian ancestry. Thus, unlike *In re Benjamin M.*, *supra*, 70 Cal.App.5th 735 and *In re Josiah T.*, *supra*, 71 Cal.App.5th 388, the court had substantial evidence from which it could conclude that ICWA did not apply to D.M. Jr. via his paternal relations. That paternal aunts would have provided any different information is again speculative. Indeed, one paternal aunt was present in court when paternal grandmother was questioned about Indian ancestry. She remained silent on the issue.

Although the Department did not make any ICWA inquiry of Father or paternal grandmother in Noah's or N.M.'s cases, Mother affirmatively represented that D.M. Jr. and Noah are Father's biologic children and never disputed that N.M. is also his biologic child. Further, Mother, paternal grandmother, and paternal aunts each disclosed a desire to have the children placed with their paternal family. That they failed to come forward with information suggesting the children were Indian children,

12

supports the inference that there was no such information to provide. (See *In re S.S., supra,* 75 Cal.App.5th 575.)

In sum, the record does not reveal readily obtainable information that was likely to bear meaningfully on the determination of whether the children were subject to ICWA.

Mother also failed to demonstrate a reasonable probability that if the Department had made the inquiry, it would have uncovered evidence suggesting a " 'reason to believe' " the child was an Indian child. (*In re A.C., supra,* 75 Cal.App.5th at p. 1024 (conc. & dis. opn. of Crandall, J.).) Indeed, Mother makes no mention of any additional ICWA information that the Department would have uncovered had it conducted the inquiry of the children's extended family members.

## DISPOSITION

The orders terminating Mother's and Father's parental rights as to their three children are affirmed.

NOT TO BE PUBLISHED

CRANDALL, J.*

I concur:

CHANEY, J.

_____

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

BENDIX, Acting P. J., Concurring and Dissenting.

I concur in the holding that mother has not demonstrated prejudice because the record does not disclose readily obtainable information that is likely to bear meaningfully upon whether the children are Indian children.  (*In re Darian R.* (2022) 75 Cal.App.5th 502, 509–510; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)  To the extent the majority concludes that prejudice should be evaluated under *People v. Watson* (1956) 46 Cal.2d 818, 836, I disagree.

BENDIX, Acting P. J.